UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF TENNESSEE
AT KNOXVILLE

| | | |
|---|---|---|
| WILLIE JOHNNY ODOMS, | ) | |
| | ) | |
| Petitioner, | ) | |
| | ) | |
| v. | ) | Nos: 3:06-cr-084 |
| | ) | 3:10-cv-339 |
| | ) | *Judge Jordan* |
| UNITED STATES OF AMERICA, | ) | |
| | ) | |
| Respondent. | ) | |

**MEMORANDUM**

This is a motion to vacate, set aside or correct sentence pursuant to 28 U.S.C. § 2255 filed by petitioner Willie Johnny Odoms ("petitioner"). The government has filed its response to the motion and petitioner has filed several supplements to the § 2255 motion. For the following reasons, the § 2255 motion to vacate will be **DENIED** and this action will be **DISMISSED**.

I.   Standard of Review

This court must vacate and set aside petitioner's conviction upon a finding that "there has been such a denial or infringement of the constitutional rights of the prisoner as to render the judgment vulnerable to collateral attack." 28 U.S.C. § 2255. To prevail under § 2255, petitioner "must show a 'fundamental defect which inherently results in a complete

miscarriage of justice,' or, an error so egregious that it amounts to a violation of due process." *United States v. Ferguson*, 918 F.2d 627, 630 (6th Cir. 1990) (quoting *Hill v. United States*, 368 U.S. 424, 428 (1968)).

Under Rule 8 of the Rules Governing Section 2255 Proceedings In The United States District Courts, the court is to determine after a review of the answer and the records of the case whether an evidentiary hearing is required. If the motion to vacate, the answer and the records of the case show conclusively that petitioner is not entitled to relief under § 2255, there is no need for an evidentiary hearing. *Baker v. United States*, 781 F.2d 85, 92 (6th Cir. 1986).

II.     Factual Background

Petitioner was convicted by a jury of both counts of a two-count indictment, which charged him with being a felon in possession of a firearm, in violation of 18 U.S.C. § 922(g)(1) (Count One), and being a felon in possession of body armor, in violation of 18 U.S.C. 931(a)(1) (Count Two). [Criminal Action No. 3:06-cr-84, Court File No. 2, Indictment].

Petitioner was sentenced as an armed career criminal under 18 U.S.C. § 924(e) to concurrent terms of imprisonment of 235 months on count one and 36 months on count two, for a total effective term of imprisonment of 235 months. [*Id.*, Court File No. 47, Judgment entered August 7, 2007]. Petitioner's sentence was affirmed on direct appeal. *United States v. Odoms*, 341 F. App'x 142 (6th Cir. 2009).

The Sixth Circuit summarized the evidence against petitioner as follows:

> At Odoms's jury trial, testimony established that on June 29, 2006, Odoms drove to the Tie Dye Tattoo shop in Knoxville, Tennessee, where he conversed and argued with the owner of the shop. Odoms left the shop in a red Dodge Intrepid. Later, a different red automobile, occupied by unidentified men, approached the shop with a gun sticking out of a rear window. The owner and several others ran inside and called the police, who arrived soon after. The owner described Odoms and his vehicle to the police and advised that Odoms drove west on Sutherland Avenue when he left.
>
> Knoxville Police Officer Michael Fowler was one of the officers who responded to the call. Officer Fowler drove west on Sutherland Avenue, encountered Odoms driving, and activated his emergency equipment. Odoms stopped his vehicle and got out of the red Intrepid, and Fowler told him not to move. Officer Fowler placed his hand on Odoms's back and felt a bullet-proof vest. As Fowler tried to restrain Odoms with handcuffs, Odoms pulled away, grabbed Fowler and struck him, and then ran. Fowler caught up with a shirtless Odoms and took him into custody. The police recovered a bullet-proof vest along the path of the chase, and a loaded black revolver beneath the driver's seat of the red Intrepid. Odoms's fiancee testified that she owned the pistol, and had last seen the gun inside her house. She testified that Odoms owned a clothing store and wore body armor because "those stores get robbed."

*Id*. at 143-44.

In support of his § 2255 motion, petitioner alleges numerous instances of ineffective assistance of counsel. He also alleges, in relation to his claims of ineffective assistance the following: the trial court improperly sentenced him under § 924(e); he was denied his right to confront witnesses; and the trial court improperly instructed the jury.

III.  Discussion

In *Strickland v. Washington*, 466 U.S. 668 (1984), the United States Supreme Court established a two-part standard for evaluating claims of ineffective assistance of counsel:

3

> First, the defendant must show that counsel's performance was deficient. This requires showing that counsel made errors so serious that counsel was not functioning as the "counsel" guaranteed the defendant by the Sixth Amendment. Second, the defendant must show that the deficient performance prejudiced the defense. This requires showing that counsel's errors were so serious as to deprive the defendant of a fair trial, a trial whose result is reliable.

*Id*. at 687.

To establish that his attorney was not performing "within the range of competence demanded of attorneys in criminal cases," *McMann v. Richardson*, 397 U.S. 759, 771 (1970), petitioner must demonstrate that the attorney's representation "fell below an objective standard of reasonableness." *Strickland v. Washington*, 466 U.S. at 687-88. In judging an attorney's conduct, a court should consider all the circumstances and facts of the particular case. *Id*. at 690. Additionally, "a court must indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance; that is, the defendant must overcome the presumption that, under the circumstances, the challenged action 'might be considered sound trial strategy.'" *Id*. at 689 (quoting *Michel v. Louisiana*, 350 U.S. 91, 101 (1955)).

The issue is whether counsel's performance "was so *manifestly* ineffective that defeat was snatched from the hands of probable victory." *United States v. Morrow*, 977 F.2d 222, 229 (6th Cir. 1992) (*en banc*). Because he is seeking relief under § 2255, petitioner bears the burden of proving by a preponderance of the evidence that his counsel was deficient. *See Pough v. United States*, 442 F.3d 959, 964 (6th Cir. 2006).

As noted, petitioner alleges numerous instances of ineffective assistance of counsel, each of which the court will consider in turn.

**1. Failure to object to the sentence under § 924(e).**

Petitioner alleges that trial counsel failed to object to his sentence as an armed career criminal under § 924(e) and that counsel failed to raise the issue on appeal. In this regard, petitioner also alleges that the trial court improperly sentenced him under § 924(e).

Petitioner was determined to be an armed career criminal based upon the following predicate offenses: (1) aggravated burglary on March 10, 1994, at 10910 Harbour Park Lane, Knoxville, Tennessee; (2) aggravated burglary on March 11, 1994, at 8464 Mecklenburg Court in Knox County, Tennessee; (3) robbery on June 6, 1994; and (4) armed car jacking on September 9, 1994). [Criminal Action No. 3:06-cr-84, Presentence Report, pp. 7-9, ¶¶ 35, 36, 37 & 39, respectively]. Petitioner contends that he did not qualify as an armed career offender because he did not have the required predicate convictions.

Petitioner first claims that his robbery conviction is not considered a violent crime by the State of Tennessee. He relies on Tenn. Code Ann. § 40-38-111(g), which concerns the rights of crime victims and differentiates between violent and nonviolent crimes. Petitioner's reliance on Tennessee law is misplaced.

Under the Armed Career Criminal Act (ACCA), there is a minimum mandatory sentence of fifteen (15) years for a person convicted of violating 18 U.S.C. § 922(g) who has three prior convictions for "a violent felony or a serious drug offense, or both, committed on occasions different from one another." 18 U.S.C. § 924(e)(1). A violent felony is "any crime

punishable by imprisonment for a term exceeding one year," that "(i) has as an element the use, attempted use, or threatened use of physical force against the person of another; or (ii) is burglary, arson, or extortion, involves use of explosives, or otherwise involves conduct that presents a serious potential risk of physical injury to another." *Id*. § 924(e)(2)(B).

With respect to petitioner's robbery conviction, the Presentence Report reflects that petitioner and his co-defendant "threatened to do [the victim] bodily injury with a quart beer bottle if he did not give them his wallet and truck." [Criminal Action No. 3:06-cr-84, Presentence Report, p. 7, ¶ 37]. Petitioner's conviction for robbery met the definition of a violent felony under the ACCA. *See United States v. Banks*, 679 F.3d 505, 506 (6th Cir. 2012) (robbery conviction "falls under the definition of 'violent felony' as a 'crime punishable by imprisonment for a term exceeding one year'"); *United States v. Fraker*, 458 F. App'x 461, 464 (6th Cir. 2012) (robbery conviction was predicate offense under ACCA because it "involved an element of violence").

Petitioner also contends that his aggravated burglary convictions should not have counted as separate offenses because he was sentenced to concurrent sentences on the convictions on the same day, and that counsel was ineffective for failing to raise the issue. This argument also lacks merit.

As previously noted, the Presentence Report indicates that the aggravated burglary offenses occurred on separate dates and at separate places. "We have stated several times that 'cases are not consolidated when offenses proceed to sentencing under separate docket numbers, cases are not factually related, and there was no order of consolidation.'" *United*

*States v. Horn*, 355 F.3d 610, 614 (6th Cir. 2004) (quoting *United States v. McAdams*, 25 F.3d 370, 374 (6th Cir.1994); *United States v. Coleman*, 964 F.2d 564, 567 (6th Cir.1992)). "'The fact that judgment was pronounced on the same day with sentences to run concurrently, without more, does not establish that [the cases] were in fact consolidated.'" *Id.* (quoting *United States v. Carter*, 283 F.3d 755, 758 (6th Cir. 2002); *Coleman*, 964 F.2d at 566); *see also United States v. Brady*, 988 F.2d 664, 669 (6th Cir. 1993) (en banc) ("[O]ffenses committed by a defendant at different times and places and against different victims, although committed within less than an hour of each other, are separate and distinct criminal episodes and [] convictions for those crimes should be counted as separate predicate convictions under § 924(e)(1).").

Petitioner also relies on Amendment 709 (effective November 1, 2007), which amended U.S.S.G. § 4A1.2 for purposes of determining whether prior sentences should be counted separately or as a single sentence with respect to career offender status. Petitioner was sentenced on August 7, 2007. The Sixth Circuit has held that Amendment 709 does not apply retroactively. *United States v. Horn*, 679 F.3d 397 (6th Cir. 2012). Amendment 709 thus affords petitioner no relief.

Because petitioner had the requisite predicate offenses to qualify as an armed career criminal, it would have been pointless for his attorney to have objected to his status as such or to have raised the issue on appeal. Thus, he cannot be said to have rendered ineffective assistance of counsel by failing to do so. *See Mathews v. United States*, 11 F.3d 583, 585 (6th Cir. 1993) (an attorney is not required to raise meritless issues on appeal); *United States*

7

*v. Hanley*, 906 F.2d 1116, 1121 (6th Cir. 1990) (the failure of defense counsel to pursue frivolous motions and objections cannot constitute ineffective assistance of counsel). Likewise, the district court did not err in sentencing petitioner as an armed career criminal. Petitioner is not entitled to relief on these claims.

**2.      Failure to make a diligent effort to secure the presence of a key witness.**

Petitioner alleges that trial counsel did not make a diligent effort to secure the presence of Michael Leggett, a key witness. Mr. Leggett was the owner of the Tie Dye Tattoo shop on the day of petitioner's arrest. He was the person who argued with petitioner that morning and he gave a statement to the police. Mr. Leggett did not testify at trial. Defense counsel informed the court that he could not find Mr. Leggett and "never could find a location to send [a] subpoena" for Mr. Leggett. [Criminal Action No. 3:06-cr-84, Court File No. 52, Transcript of Proceedings, p. 17].

Thornton Elmore testified at trial that he was working for Mr. Leggett as a handyman on the day in question. [*Id*. at 3-5]. He testified that petitioner had words with Mr. Leggett and threatened "to get his cousins and they were going to shoot the place up." [*Id*. at 6]. Mr. Elmore testified that petitioner left in a red Intrepid and afterwards "there was a red Excursion or SUV of some sort came up with several gentlemen in it and ... the right window ... was open with a gun sticking out." [*Id*. at 7]. Mr. Elmore called the police and spoke with the officers upon their arrival, giving them a description of petitioner and his car. [*Id*. at 7-8].

Petitioner contends that, had Mr. Leggett testified, his testimony would not have been consistent with Mr. Elmore's testimony, specifically with reference to the red Excursion.

8

This overlooks the fact that petitioner was not convicted of an offense against either Mr. Leggett or Mr. Elmore. He was convicted of being a felon in possession of a firearm and body armor. The statements of Mr. Leggett and Mr. Elmore simply gave the police the impetus to investigate petitioner. When petitioner was observed committing a traffic offense, the officers stopped his vehicle and eventually discovered the firearm and body armor.

Clearly, had counsel secured the presence of Mr. Leggett at trial, the result of the proceeding would not have been different. Accordingly, the failure of counsel to secure the presence of Mr. Leggett did not constitute ineffective assistance of counsel and petitioner is not entitled to relief on this claim.

In a related claim, petitioner contends that his rights under the Confrontation Clause were violated because Mr. Leggett was not subject to cross-examination. Again, this argument overlooks the fact that Mr. Leggett did not testify against petitioner at trial. Accordingly, petitioner is not entitled to relief on this claim.

**3.     Failure to move to quash the indictment.**

Petitioner alleges his attorney should have moved to quash the indictment based upon the fact that petitioner did not have the requisite predicate offenses for armed career criminal status. Ignoring the fact that petitioner did in fact have the requisite predicate offenses, this claim fails on its face. Petitioner was indicted for being a felon in possession of a firearm and body armor. [*Id.*, Court File No. 2, Indictment]. His status as an armed career criminal was not an element of either offense. Petitioner is not entitled to relief on this claim.

**4.     Failure to move for a continuance.**

Petitioner alleges that counsel should have moved for a continuance in order to secure Mr. Leggett's presence at trial. As noted, however, Mr. Leggett's testimony would not have changed the outcome of the trial and counsel was not ineffective in failing to move for a continuance. Petitioner is not entitled to relief on this claim.

**5.     Failure to propose jury instructions.**

This claim refers to Officer Fowler's testimony that, upon responding to the call at Tie Dye Tattoo, he activated his vehicle's audio and video recording devices. [*Id.*, Court File No. 52, Transcript of Proceedings, p. 35]. According to Officer Fowler, the camera is mounted on the windshield and goes all the time; when he steps out of the vehicle to speak with someone he turns on the microphone that is attached to his belt. [*Id.*]. He also stated that there is a limited range to the microphone and when "you get so far away from the car, the audio starts to get spotty in terms of picking up." [*Id.* at 36].

Although Mr. Elmore testified at trial regarding the red Excursion with the gun sticking out of the right window, he admitted that the audiotaped recording of his discussion with the officers did not mention the red Excursion with the gun; Mr. Elmore nevertheless insisted that he had told the officers about the red Excursion and the gun. [*Id.*, Court File No. 52, Transcript of Proceedings, pp. 17-20]. Petitioner concludes that, because the audio recording should have captured everything that was said to the officers, Mr. Elmore was lying when he testified at trial about the red Excursion. For that reason, petitioner alleges his

10

attorney should have requested a jury instruction regarding prior inconsistent statements, specifically section 7.04 of the Sixth Circuit's Pattern Criminal Jury Instructions:

> (1) You have heard the testimony of _____. You have also heard that before this trial he made a statement that may be different from his testimony here in court.
>
> (2) This earlier statement was brought to your attention only to help you decide how believable his testimony was. You cannot use it as proof of anything else. You can only use it as one way of evaluating his testimony here in court.

Sixth Circuit Pattern Criminal Jury Instructions § 7.04 (2009). In this regard, petitioner also alleges the trial court failed to properly instruct the jury on prior inconsistent statements.

With respect to the credibility of witnesses, the court instructed the jury as following:

> [A] part of your job as jurors is to decide how credible or believable each witness was. Again this is your job, not mine.
>
> It is up to you to decide if a witness' testimony was believable and how much weight you think it deserves. You are free to believe everything that a witness has said or only a part of it or none of it at all. You should act reasonably and carefully in making these decisions.
>
> Let me suggest some things for you to consider in evaluating each witness' testimony. Ask yourself if the witness was able to clearly see or hear the events. Sometimes even an honest witness may not be able to see of hear what was happening and may make a mistake. Ask yourself how good the witness' memory seemed to be. Did the witness seem able to accurately remember what happened.? Ask yourself if there was anything else that may have interfered with the witness' ability to perceive or to remember the events. Ask yourself how the witness acted while testifying. Did the witness appear to be honest or did the witness appear to be lying. Ask yourself if the witness had any relationship to the government or the defendant or anything to gain or lose from the case that might influence the witness' testimony. Ask yourself if the witness had any bias or prejudice or any reason for testifying that might cause the witness to lie or to slant the testimony in favor of one side of the other. Ask yourself if the witness testified inconsistently while on the witness stand or if the witness said or did something or failed to say or do something at any other time that is inconsistent with what the witness said while

11

testifying. If you believe the witness was inconsistent, ask yourself if this makes the witness' testimony less believable. Sometimes it may, other times it may not. Consider whether the inconsistency was about something important or about some unimportant detail. Ask yourself if it seemed like an innocent mistake or did it seem deliberate.

Ask yourself how believable the witness' testimony was in light of all of the other evidence. Was the witness' testimony supported or contradicted by other evidence that you found to be believable? If you believe that a witness' testimony was contradicted by other evidence, remember that people sometimes forget things and that even two honest people who witness the same event may not describe it exactly the same way.

Ladies and gentlemen, these are only some of the things that you may consider in deciding how believable each witness was. You may also consider other things that you think shed some light on the witness' believability. Use your common sense in your every day experience in dealing with other people and then decide what testimony you believe and how must weight you think it deserves.

[Criminal Action No. 3:06-cr-84, Court File No. 52, Transcript of Proceedings, pp. 110-111].

The foregoing instructions, taken as a whole, "adequately informed the jury of the relevant considerations and provided a basis in law for aiding the jury in reaching its decision." *United States v. Frederick*, 406 F.3d 754, 761 (6th Cir. 2005). Petitioner is not entitled to relief on his claim that counsel was ineffective in failing to request an instruction pursuant to section 7.04 or on his claim that the court improperly instructed the jury.

To the extent petitioner alleges that he received ineffective assistance based upon the cumulative errors of counsel, petitioner has not demonstrated error on the part of trial counsel and is not entitled to relief on this claim. *Getsy v. Mitchell*, 495 F.3d 295, 317 (6th Cir. 2007) ("[Petitioner's] cumulative-error claim therefore fails because there are simply no errors to cumulate.").

Based upon the foregoing, petitioner has failed to demonstrate that he received ineffective assistance of counsel under the standard set forth in *Strickland*.

IV. Conclusion

Petitioner is not entitled to relief under § 2255 and his motion to vacate, set aside or correct sentence will be **DENIED**. This action will be **DISMISSED**. The court will **CERTIFY** that any appeal from this action would not be taken in good faith and would be totally frivolous. Therefore, this court will **DENY** petitioner leave to proceed in forma pauperis on appeal. *See* Rule 24 of the Federal Rules of Appellate Procedure. Petitioner having failed to make a substantial showing of the denial of a constitutional right, a certificate of appealability **SHALL NOT ISSUE**. 28 U.S.C. § 2253; Rule 22(b) of the Federal Rules of Appellate Procedure.

**AN APPROPRIATE ORDER WILL ENTER.**

s/ Leon Jordan<br>United States District Judge